IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LAMAR EDWARD BARNES,

    Petitioner,

v.                                       Civil Action No. 3:11CV551

RANDALL MATHENA,

    Respondent.

**MEMORANDUM OPINION**

Lamar Edward Barnes, a Virginia state prisoner proceeding pro se, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition"). Respondent has moved to dismiss on the ground that the one-year statute of limitations governing federal habeas petitions bars the § 2254 Petition. Barnes has responded. The matter is ripe for disposition.

**I. PROCEDURAL HISTORY**

A jury sitting in the Circuit Court for the City of Portsmouth, Virginia ("Circuit Court") convicted Barnes of first-degree murder, use of a firearm in the commission of murder, malicious wounding, and use of a firearm during the commission of malicious wounding. The Circuit Court sentenced Barnes to life in prison plus twenty-eight years. Barnes appealed his convictions.

At this juncture, it is appropriate to summarize the evidence of Barnes's guilt. The Court of Appeals of the Virginia aptly recited this evidence as follows:

> On a late afternoon, Mike Artis and Lamar Edward Barnes arrived at Mark King's residence for a visit. King was in the residence with his girlfriend Amy McCrae, Adam Gregory, and Chris Hopkins. King testified he watched television while Gregory, Hopkins, Artis, and Barnes were in a back room playing video games. He testified that he had known all four of the male visitors approximately one and a half to two years and that he knew Barnes only by the name "JoJo."
> Gregory and Hopkins testified that Artis, whom they had previously known, arrived at King's residence with a person they had not previously met. They identified Barnes in court as the person who accompanied Artis, and Hopkins testified that Barnes was introduced to him as "JoJo." Gregory and Hopkins also testified they went into the back room with Artis and Barnes and, for fifteen to twenty minutes, played video games and smoked marijuana.
> King later entered the back room, threw a large wad of cash onto a table, and said, "Don't you wish y'all could roll like this?" He then picked up the cash and exited the room, leaving the four male visitors to continue playing video games. Five to fifteen minutes after King exited the back room, Barnes walked to the living room where King was sitting. King testified Barnes said, "Mark, check this out." When King turned to Barnes, he saw Barnes pointing a gun at his head. Barnes then shot him in the head. King did not remember the gun being fired and testified he still has the "bullet lodged in [his] brain."
> In the back room, Hopkins heard "two loud pops" in quick succession, but he did not recognize the sounds as gunfire and continued playing a video game. Gregory testified he recognized the sounds as gunshots and ran from the room with Artis following closely behind him. Gregory saw McCrae kneeling in front of the kitchen door and Barnes standing over her. He testified that Barnes put a gun to the back of

2

McCrae's head and said, "Don't run from me, bitch." Barnes then shot her in the head.

Gregory testified he retreated into the back room, locked the door, and yelled to Hopkins, "Get out of the house, get out of the house." As Gregory broke a window pane and attempted to exit the house with Hopkins, Artis broke through the door. Artis pushed Hopkins into Gregory and began punching and stabbing them.

A handyman, who had been erecting a fence in the backyard, heard the gunshots and breaking glass. He ran into the residence, saw McCrae on the floor, and noticed a man outside the front door. He then went to the back room and pulled Artis away from Hopkins. The handyman gave chase as Artis fled but was unable to catch him.

When police and rescue personnel arrived, they transported McCrae to the hospital. McCrae's baby was delivered by cesarean section. The baby lived, but McCrae died.

Barnes v. Commonwealth, No. 2743-03-1, 2005 WL 1080105, at *1-2 (Va. Ct. App. May 10, 2005) (alteration in original). In concluding that any improper evidence about McCrae's pregnancy was harmless, the Court of Appeals of Virginia further stated:

> We acknowledge that the issue of identity was contested at trial. Artis testified that another man, not Barnes, was the person who shot McCrae. In view of Artis's testimony that Barnes, his cousin, was not the man who accompanied him to King's residence, the jury had to make a credibility determination. The jury heard Artis testify, however, that he had entered into a plea agreement with the Commonwealth and had identified Barnes as the person who shot McCrae. During the plea agreement process, he admitted Barnes held the gun over McCrae while saying, "Where is the stash? Where is the stash?" He also admitted saying that Barnes showed him a "wad of cash" and that Barnes indicated he had taken the money from King. He further admitted saying Barnes displayed the same gun two days after the killing and told him to identify another man as the perpetrator. In view of this

3

substantial impeachment of Artis's testimony, we do not believe that the record remotely establishes that [McRae's] mother's testimony about the baby shower and her trip to the hospital had the effect of prejudicing the jury into believing that Barnes, and not some other person, committed the crimes.

The positive evidence of Barnes's identity was overwhelming. King had known Barnes for almost two years, and he identified Barnes as the person who entered the residence with Artis and shot him. In addition to King's identification, Gregory and Hopkins readily identified Barnes at the trial. While Gregory and Hopkins could not identify Barnes in a photographic lineup prior to trial, the jury heard evidence that Barnes had been in the residence for at least twenty minutes prior to the murder. During that time, Barnes was in the presence of Gregory and Hopkins and was playing video games in a room with them. In view of this overwhelming evidence of identity, we cannot say the testimony by McCrae's mother [about her daughter's pregnancy] was so impressive in this case as to prejudice the jury and to cause the jury to mistakenly believe Barnes was the criminal.

Id. at *3-4.

After Barnes's trial concluded, on October 7, 2003, Barnes moved for a new trial on the grounds that the prosecution failed to disclose that a special prosecutor nolle prosequied two drug charges against King after King had testified at Barnes's trial. The Circuit Court denied the motion, but requested that the special prosecutor from the City of Chesapeake, Ms. Shelton, who had handled King's case, appear before the Circuit Court to answer questions.[1]

---

[1] In Barnes's trial, Almetia Fields and Douglas Ottinger represented the Commonwealth Attorney's Office for the City of

At the hearing on October 17, 2003, Mr. Ottinger, from the Commonwealth Attorney's Office for the City of Portsmouth stated that his "office had no contact with Ms. Shelton in the decision-making on this with Mr. King's charges whatsoever." (Oct. 17, 2003 Mot. Tr. 5.)  Ms. Shelton stated that King's charges were nolle prosequied because Barnes's co-defendant, Michael Artis, had been the informant on which King's charges were based and Artis had proved to be an unreliable witness. Ms. Shelton stated, "There was no secret deal with [King] to testify.  If [King] had testified or not, it would have made no difference [on] our decision."  (Id. at 8-9.)  After hearing the foregoing information, the Circuit Court again denied the motion for a new trial.[2]

---

Portsmouth.  The Commonwealth Attorney's Office for the City of Portsmouth requested that an assistant commonwealth's attorney from the City of Chesapeake handle any criminal charges against King.  Ms. Fields explained that when her office has "a witness in a case who may also have criminal responsibility we get a special prosecutor."  (Oct. 7, 2003 Tr. 15.)

[2] The same Circuit Court judge who denied the motions for a new trial had heard King's trial testimony.  At trial, King testified that he did not have any doubt that Barnes was the person who had shot him.  (July 31, 2003 Tr. 117.)

5

### A. Direct Appeal

On September 28, 2005, the Supreme Court of Virginia refused Barnes's petition for appeal. Barnes v. Commonwealth, No. 051198 (Va. Sept. 28, 2005).

### B. First State Habeas

On September 27, 2006, Barnes filed a petition for a writ of habeas corpus in the Circuit Court. The Circuit Court dismissed the petition on March 6, 2007. Barnes v. Dir. Va. Dep't Corr., No. CL06-2923 (Va. Cir. Ct. Mar. 6, 2007). Barnes appealed that decision to the Supreme Court of Virginia. On July 20, 2007, because Barnes "failed to timely file the petition for appeal, the [Supreme Court of Virginia] dismisse[d] the petition." Barnes v. Johnson, Dir. Dep't Corr., No. 071300 (Va. July 20, 2007) (citing Va. Sup. Ct. R. 5:17(a)(1)).[3] On September 21, 2007, the Supreme Court of Virginia denied Barnes's petition for rehearing. Barnes v. Johnson, Dir. Dep't Corr., No. 071300 (Va. Sept. 21, 2007).

### C. Second State Habeas Petition

On December 9, 2010, Barnes filed a second state habeas petition with the Circuit Court. In this petition, Barnes

---

[3] "In every case in which the appellate jurisdiction of this Court is invoked, a petition for appeal must be filed with the clerk of this Court . . . in the case of an appeal direct from a trial court, not more than three months after entry of the order appealed from . . . ." Va. Sup. Ct. R. 5:17(a) (West 2007).

6

alleged that the prosecution had violated his rights by failing to disclose that a key witness, Mark King, was given immunity from prosecution in return for testimony against Barnes. Barnes asserted that he did not discover the basis for this claim until January 13, 2010. The Circuit Court dismissed the petition on February 17, 2011. Barnes v. Watson, Warden, Va. Dep't Corr., No. CL10-2756 (Va. Cir. Ct. Feb. 17, 2011). The Circuit Court found,

> The petition was untimely filed. Virginia Code 8.01-654(A)(2) provides that a habeas petitioner must file his petition within two years from the date of final judgment in the state trial court or one year from the date of final disposition of the direct appeal in state court, whichever is later. In this case, then, Barnes had until September 28, 2006, to file his habeas petition in state court, but his present petition was filed nearly four years after that date.

Id. at 2 (internal citations omitted). Barnes appealed that decision. On July 28, 2011, the Supreme Court of Virginia refused Barnes's petition for appeal. Barnes v. Watson, Va. Dep't of Corr., No. 110922 (Va. July 28, 2011).

### D. Federal Habeas Petition

On August 14, 2011, Barnes filed his § 2254 Petition in this Court. (§ 2254 Pet. 15.)[4] In the § 2254 Petition, Barnes asserts entitlement to relief upon the following ground:

---

[4] The Court deems the petition filed on the date Barnes swears he placed the petition in the prison mailing system. Houston v. Lack, 487 U.S. 266, 276 (1988).

7

"Failure of the Commonwealth Attorney to disclose its key witness immunity from prosecution in return for favorable testimony violating petitioner['s] due process rights as made applicable to the states by way of the Fourteenth Amendment.[5]" (Br. Supp. § 2254 Pet. 4 (capitalization corrected).)

## II. ANALYSIS

### A. Statute of Limitations

Respondent contends that the federal statute of limitations bars Barnes's claim. Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically, 28 U.S.C. § 2244(d) now reads:

> 1. A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>    **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>    **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution

---

[5] "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.

>    or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>    **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> **2.** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

**B. Commencement of the Statute of Limitations Under 28 U.S.C. § 2244(d)(1)(A)**

Barnes's judgment became final on Tuesday, December 27, 2005, when the time to file a petition for a writ of certiorari expired. Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired . . . ." (citing 28 U.S.C. § 2244(d)(1)(A))); see Sup. Ct. R. 13(1) (petition for certiorari should be filed within ninety days of entry of judgment by state court of last resort or of the order denying

discretionary review). The limitation ran for 273 days, until September 27, 2006, when Barnes filed his First State Habeas Petition. See 28 U.S.C. § 2244(d)(2).

The limitation period remained tolled until March 6, 2007, when the Circuit Court dismissed Barnes's First State Habeas Petition. Although Barnes pursued an appeal of that decision, that appeal did not further toll the limitation period because the appeal was not "properly filed." 28 U.S.C. § 2244(d)(2);[6] see Hines v. Johnson, No. 2:08cv102, 2009 WL 210716, at *2 (E.D. Va. Jan. 28, 2009) (precluding tolling the time between the state's denial of a habeas petition and the ultimately untimely petition for appeal of that decision). The limitation period then ran for more than four additional years before Barnes filed his § 2254 Petition.[7] Therefore, unless Barnes demonstrates that

---

[6] To qualify for statutory tolling, an action must be a (1) properly filed (2) post-conviction or other collateral review of (3) the pertinent judgment. 28 U.S.C. § 2244(d)(2).

> [A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

Artuz v. Bennett, 531 U.S. 4, 8 (2000) (internal footnote omitted) (citing cases).

[7] Because the Virginia courts found that the state statute of limitations barred Barnes's Second State Habeas Petition,

10

either a belated commencement of the limitation period or equitable tolling renders his petition timely, the statute of limitation bars the § 2254 Petition.

C. **Belated Commencement**

As pertinent here, the statute of limitations may commence on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). This belated commencement provision protects petitioners when they could not have brought their claims earlier. "Under § 2244(d)(1)(D), the limitation period begins to run when the petitioner knows, or through due diligence could have discovered, the factual predicate for a potential claim, not when he recognizes their legal significance." McKinney v. Ray, No. 3:07CV266, 2008 WL 652111, at *2 (E.D. Va. Mar. 11, 2008) (citing Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004); Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)).

Barnes contends that, under § 2244(d)(1)(D), the limitation period should commence "when Petitioner received, via mail, an affidavit dated January 13, 2010 from 'Mark King' that he was given immunity for his testimony against Petitioner." (§ 2224 Pet. 14.) In that affidavit, King swears,

---

that petition does not qualify for statutory tolling. See Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005).

11

On or about, April 4th 2002 I was shot in the head and my girlfriend Amy McRae was shot and killed. When I came out of the hospital I had no memory due to the head injury. I was led to believe that Lamar Barnes shot me and Amy, so I was taken to the homicide department and shown a page of pictures of about 6 guys and Lamar[']s picture was on it. I picked him and said he shot me, and at the time I really believed he did. I believed it for a long time until I started remembering stuff then I had doughts [sic]. I told Detective Lodge I thought we had the wrong person and he got mad. He told Almesha [sic] Fields and she got mad at me. She was the Commonwealth Attorney. They decided to charge me and prosecute me for the drugs they found in my house at least that [is] what they said, they did it to use against me to force me to keep after Lamar Barnes. But to be honest I still wasn[']t 100% sure that Lamar was innocent [sic] because my memory was still not back. So when they charged me they told me if I kept testifying against Lamar theyed [sic] make the charges go away. Which they did after Lamar was convicted. But my memory of that day did come back in time and I'm 100% positive that not only did Lamar Barnes not shoot us, he was never at our home that day. I was shot by Bobby Petty and so was Amy McRae. I never had any intent to lock up a[n] innocent [sic] man. And for years now I written [sic] people to help Lamar Barnes. I[']ve met with the ATF taken lie detectors and begged them to help Lamar. When all this happened I was injured and hurt over the loss of Amy but everyone even her family got mad and turned on me when I said I thought Lamar was innocent [sic]. But when all of my memory came back it was to [sic] late Lamar was already convicted and all I can do is keep trying to help him and ask people to help him. I'm sorry its [sic] taken so long but I in federal prison and I've been trying. Portsmouth Commonwealth Attn [sic] Office knew and used threats to scare all of us just to get a conviction of an innocent [sic] man. Lamar Barnes needs to be freed and Bobby Petty need[s] to go to prison!

(Br. Supp. § 2254 Pet. Ex. A (capitalization corrected.) Given Barnes's previous motions for a new trial raising this allegation, the Court doubts whether Barnes's receipt of the Mark King affidavit entitles Barnes to a belated commencement of the limitation period. See Escamilla v. Jungwirth, 426 F.3d 868, 871 (7th Cir. 2005) ("Section 2244(d)(1)(D) does not restart the time when corroborating evidence becomes available . . . . As a matter of law, new evidence supporting a claim actually made at or before trial cannot form the basis of a new period under § 2244(d)(1)(D).");[8] see also Deloney v. McCann, 229 F. App'x 419, 422 (7th Cir. 2007) ("The statute of limitations began running when [the petitioner] became aware of the facts giving rise to his claim, not when he obtained the evidence to support it."). Nevertheless, it is unnecessary to resolve this issue.

Even assuming King's assertion (that Ms. Fields used criminal charges brought against King as leverage to compel King to testify against Barnes) constitutes a new factual predicate

---

[8] In a letter dated August 11, 2003, Barnes complained to the Circuit Court that, "the victim Mark King was forced to testify against me because of his drug charges that he had pending. Mark King and Micheal Artis was forced or even cohersed [sic] to testify and lie on me to better there [sic] self for a plea bargain for pending charges." Commonwealth v. Barnes, No. CR02-2944, Cir. Ct. R. 137 (Va. Cir. Ct. filed Aug. 15, 2003).

13

under § 2244(d)(1)(D), the statute of limitation still bars Barnes's § 2254 Petition. In his Second State Habeas Petition, Barnes acknowledged that he knew of the substance of King's affidavit, at least by the time King executed the affidavit. Specifically, Barnes swore that "the factual predicate supporting his claims was discovered through the exercise of due diligence on January 13, 2010 **See Exhibit A**." Brief in Support of Petition for Writ of Habeas of Corpus, Preliminary Statement, Barnes v. Watson, No. CL10-10-2756-00 R. 14 (Va. Cir. Ct. filed Dec. 9, 2010) (internal quotation mark omitted).[9] Barnes, however, did not file his § 2254 Petition within one year of January 13, 2010. Rather, 577 days elapsed between January 13, 2010 and Barnes's filing of his § 2254 Petition in this Court on August 14, 2011. Accordingly, a belated commencement of the limitation period does not render the § 2254 Petition timely.

D. **Equitable Tolling**

Equitable tolling may apply to petitions under 28 U.S.C. § 2254. See Holland v. Florida, 130 S. Ct. 2549, 2560 (2010). Nevertheless, the Supreme Court has "made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and

---

[9] Exhibit A is King's Affidavit.

14

prevented timely filing." Id. at 2562 (quoting Pace, 544 U.S. at 418). An inmate asserting equitable tolling "'bears a strong burden to show specific facts'" which demonstrate that he fulfills both elements of the test. Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)).

Barnes does not argue entitlement to equitable tolling. Moreover, the record does not suggest that an extraordinary circumstance prevented Barnes from filing his § 2254 Petition within one year of the discovery of the substance of the King Affidavit. If Barnes had any uncertainty as to whether his Second State Habeas Petition would qualify for statutory tolling under § 2244(d)(2), he should have filed "a 'protective' petition" with this Court and asked the Court "to stay and abey the federal habeas proceedings until state remedies [were] exhausted." Pace, 544 U.S. at 416 (citing Rhines v. Weber, 544 U.S. 269, 278 (2005)).

Additionally, the record does not justify tolling the limitation period on the ground that Barnes is actually innocent. Even if actual innocence provided a basis for equitable tolling,[10] Barnes has not submitted evidence of the

---

[10] See O'Neill v. Dir., Va. Dep't Corr., No. 3:10CV157, 2011 WL 3489624, at *6 (E.D. Va. Aug. 9, 2011) (citing cases and

requisite quality to support such a claim. See Hill v. Johnson, No. 3:09cv659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-53 (8th Cir. 1997); Feaster v. Beshears, 56 F. Supp. 2d 600, 610 (D. Md. 1999)). A claim of actual innocence requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [that supports the claim of innocence]." Schlup v. Delo, 513 U.S. 298, 324 (1995).

Given the timing of King's affidavit[11] and King's prior statements implicating Barnes in the murder of McCrae, the Court concludes that King's affidavit is not "trustworthy" and does not constitute "reliable" evidence of innocence sufficient to support a claim of actual innocence. Schlup, 513 U.S. at 324; United States v. Lighty, 616 F.3d 321, 375 (4th Cir. 2010) ("Post-trial recantations of testimony are looked upon with the utmost suspicion.") (internal quotation marks omitted), cert.

---

indicating that actual innocence does not provide a basis for tolling the limitation period).

[11] King waited many years after Barnes's trial and until after King himself was incarcerated to produce the affidavit. See House v. Bell, 547 U.S. 518, 537 (2006) (observing that in assessing a claim of actual innocence the Court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence")(internal quotation marks omitted).

denied, 132 S. Ct. 451 (2011).[12] To accept such commonplace recantations by convicted criminals would ignore the Supreme Court's admonition that the quality of evidence necessary to support a claim of actual innocence "is obviously unavailable in the vast majority of cases." Schlup, 513 U.S. at 324; see Calderon v. Thompson, 523 U.S. 538, 559 (1998) (emphasizing that new reliable evidence of innocence is a "rarity"); see also Carter v. Virginia, No. 3:09CV121-HEH, 2010 WL 331758, at *8 (E.D. Va. Jan. 26, 2010)("'It is not unusual for one of two convicted accomplices to assume the entire fault and thus exculpate his codefendant by the filing of a recanting affidavit or other statement.'" (quoting Drew v. State, 743 S.W.2d 207, 228 (Tex. Crim. App. 1987))). Accordingly, Respondent's Motion to Dismiss will be granted. The § 2254 Petition will be denied and the action will be dismissed.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of

---

[12] At trial, the prosecution introduced substantial evidence that Barnes's family members had threatened and pressured Artis to change his testimony and allege that Bobby Petty had committed the crimes instead of Barnes. (See, e.g., Aug. 1, 2003 Tr. 124.) Additionally, Bobby Petty did not match the physical description of the individuals the handyman saw fleeing from King's residence.

a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Barnes is entitled to further consideration in this matter. A certificate of appealability will therefore be denied.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to Barnes and counsel for Respondent.

An appropriate Order shall issue.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June 20, 2012